IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

LORI HOPKINS, et al. )
       )
    v. ) Case No. 2: 19-CV-04054-NKL
       )
AEROCARE HOME MEDICAL )
EQUIPMENT, INC., et. al. )
       )
    Defendants. )

**JOINT MOTION FOR APPROVAL OF**
**FLSA COLLECTIVE ACTION SETTLEMENT**

COME NOW Plaintiffs Lori Hopkins and Kila Hagler ("Plaintiffs") and Defendants Aerocare Home Medical Equipment, Inc., Aercocare Employee Benefits, Inc. and Aerocare Holdings, Inc. (collectively referred to as "Aerocare") and jointly move this Court for its Order approving their Settlement Agreement and Release of Claims, a copy of which is attached hereto as Exhibit A. The Parties agree that the settlement set forth in the Settlement Agreement is fair and reasonable and provides significant benefit to each of the Class Members.

**I.    Procedural Background**

Plaintiff Lori Hopkins filed her Complaint on March 15, 2019 (Doc. No. 1). On August 14, 2019, Plaintiffs were given leave to file their First Amended Complaint, adding Plaintiff Kila Hagler as a party to this matter. (Doc. Nos. 33, 34, & 35). Plaintiffs filed their Complaint on behalf of themselves and other allegedly similarly situated Aerocare employees claiming that Aerocare's pay practices violated the Fair Labor Standards Act ("FLSA"). Defendants denied they were liable under any of Plaintiffs' claims. (Doc. Nos. 31 & 37).

The Parties exchanged written discovery. Defendants took the depositions of each of the Plaintiffs. Plaintiffs took the deposition of Aerocare's Corporate Representative, Daniel Bunting (CEO of Aerocare Holdings, Inc.). Plaintiffs also took the deposition of the former Regional

Manager of Aerocare's Missouri subsidiary, Everette Webb.  On January 6, 2020, Plaintiffs filed their Motion for Conditional Class Certification and Suggestions in Support (Doc. Nos. 61 & 62).  Thereafter, settlement negotiations between the Parties and progressed in earnest.

## II.     The Settlement Process

The Parties conducted extensive settlement negotiations, both informally by telephone and e-mail and during a Court ordered mediation with Francis X. Neuner.  The Court ordered mediation occurred on June 25, 2019.  That mediation was unsuccessful as neither party had sufficient information regarding the other party's claims or defenses.

Settlement negotiations slowed until after depositions were completed.  Thereafter, the Parties engaged in healthy and ongoing negotiations starting in earnest in January of 2020 and proceeding to full resolution.  Throughout the process, the Parties engaged in good-faith, arms-length negotiations and reached an agreement in principle to resolve the claims of the Class after months of negotiations.

Plaintiffs and Defendants share an interest in fully and finally resolving the issues raised in this action.  Because the Parties recognize the expense and difficulty of continuing to prosecute this action through trial and subsequent appeals, as well as the risk and uncertainty of the outcome inherent in any such litigation, the Parties have agreed to the settlement which they now ask the Court to approve.  The Agreement is in the best interests of the Class and represents a fair, reasonable, and adequate resolution of the claims in the lawsuit.

## III.    Summary of the Settlement

The Parties have agreed to proceed with this matter as a collective action under the FLSA, to include all customer service representative employees that worked on-call at any one of the forty (40) identified Aerocare locations over a three-year period prior to the initial Complaint being filed.  The collective action class includes all customer service representatives who worked on-

call shifts that were not paid on an hourly basis. The Parties have agreed any such employee who opts-in to the case shall be paid an additional six (6) hours per week for "weekly" on-call shifts and an additional hour per shift for "daily" on-call shifts (shifts were either "weekly" or "daily," not both) at the applicable pay rate (overtime as applicable) for each on-call shift the employee worked during that three year period ("back wage"), plus an additional payment of 50% of the back wage award.

The additional hours allotted per shift represents a good-faith estimate of the time customer service representatives worked during on-call shifts. The three-year time period represents the greatest limitations period allowed under the FLSA. The fifty percent (50%) additional damages are less than one hundred percent (100%) liquidated damages allowed under the FLSA, but represent a compromise allowing the Parties to avoid the uncertainty of further litigation.

The settlement covers only those individuals who affirmatively opt-in to this lawsuit; the settlement does not resolve or release the claims of individuals who do not choose to opt into this case.

The settlement proceeds will be distributed to class members based on the number of shifts they worked as a customer service representative during the three (3) year period, with each additional hour paid at their applicable standard or premium wage due for that time, plus the additional "50%" amount. Individuals who worked the most within the three (3) year period stand to gain the most from the settlement payment.

The agreement provides a mechanism for resolution of the Parties' claims, with an agreement related to the class definition, payment procedures, class administrator, notice procedures and amounts to be paid to each class member that opts in.

The agreement also provides service awards of $5,000 to each of the named Plaintiffs. These service awards acknowledge Plaintiff Hopkins' time and energy spent in participating in the mediation of this matter and each Plaintiffs' time and energy spent answering written discovery, giving depositions, participating in the litigation of this matter and assisting counsel to resolve this dispute. Plaintiffs believe that such awards are commensurate with the benefit each provided to the opt-in plaintiffs as a whole.

The Parties have not reached resolution regarding Plaintiffs' counsel's attorneys' fees, and the parties agreed to submit this issue to the Court for determination. Plaintiffs have filed a separate motion on this issue. Whatever fees are awarded by the Court will not reduce any compensation due the settlement participants.

Shortly after this Court's approval of the settlement, the Class Administrator will distribute notices to each of the potential class members. Once the Class Administrator receives opt-in forms from class members, Defendants will pay each such class member pursuant to the Parties' agreement and the class members' payroll documents.

## IV. The Settlement Satisfies the Requirements for Judicial Approval

Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval. Similarly, there are no objectors to FLSA settlements because no class member is bound by the settlement unless he or she affirmatively opts into the case. This FLSA settlement, therefore, is subject to a one-step approval process. Where, as here, the litigation arises from a private enforcement action under § 216(b) of the FLSA, the standard for approval is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (*citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). The Court, therefore, should

perform two inquiries prior to approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. Typically, Courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

Based on the contested nature of this litigation and the quality of the settlement, this Court should readily conclude that this settlement is also a reasonable resolution of a *bona fide* dispute in contested litigation.

### A. The Proposed Settlement is the Product of Contested Litigation.

The Court's record makes plain that the proposed settlement is the product of contested litigation. In their Complaint and Amended Complaint, Plaintiffs made detailed factual allegations describing Defendant's allegedly unlawful compensation practices. Defendants moved to dismiss Plaintiff's Complaint. That motion was denied. Thereafter, Defendants answered denying each of Plaintiffs' material factual allegations, and asserting an array of affirmative defenses that Defendants argued would bar Plaintiffs' claims in whole or in part. The settlement of this lawsuit resulted only after more than a year of litigation, written discovery, motion practice and multiple depositions.

Prior to the settlement, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. The Parties also participated in a mediation with Francis X. Neuner, who remained involved in settlement negotiations as the matter progressed. Even after agreeing in principal, the Parties

continued to negotiate the contours of their agreement for numerous months. Accordingly, the Court should conclude that the proposed settlement was the product of contested litigation.

### B. The Proposed Settlement Reflects A Fair And Reasonable Resolution Of A Bona Fide Dispute Between The Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

#### 1. A Bona Fide Dispute Exists Between The Parties.

Plaintiffs alleged that Defendants violated the FLSA by not paying customer service representatives on an hourly basis for the time those individuals spent working during on-call shifts. Plaintiffs also alleged that they were entitled to liquidated damages and a three-year statute of limitations under the FLSA. Defendants denied Plaintiffs' allegations arguing that no violation of law had occurred, that Defendants Aerocare Holdings, Inc. and Aerocare Employee Benefits, Inc. were not the Plaintiffs' employers and that no location outside of Missouri had a similar pay practice. Defendants also argued that Plaintiffs were not entitled to liquidated damages or a three-year limitations period because Defendant acted in good faith and Plaintiffs could not establish a "willful" violation of the FLSA.

If Plaintiffs' allegations were all ultimately correct, then Defendant would be faced with the prospect of a significant monetary verdict in favor of Plaintiffs, as well as the obligation to pay litigation fees and costs. If Defendant's arguments were all correct, then Plaintiffs faced the risk of a complete defense verdict and no recovery of any kind. Accordingly, the Court should conclude that a *bona fide* dispute between the parties existed.

### 2. The Proposed Settlement Is Fair And Reasonable.

This settlement was the product of arm's-length and spirited negotiations by experienced counsel and has the salutary effect of (1) providing substantial relief to the Class, at or near the best result possible at trial, and (2) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). Public policy also favors settlements of FLSA litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). Indeed, federal courts within this Circuit routinely approve settlements reached in FLSA collective actions. *See, e.g., Stull v. Kraft Foods Global, Inc.*, Case No. 09-4187, Doc. No. 38 (W.D. Mo. Nov. 8, 2010) (Laughrey, J.); *Marshall v. R.J. Reynolds Tobacco Co.*, Case No. 07-227, Doc. No. 288 (W.D. Mo. June 8, 2010) (Dorr, J.); *Hernandez v. Texas Capital Bank*, Case No. 07-726, Doc. No. 107 (W.D. Mo. July 14, 2009) (Smith, J.).

Here, the Parties settled the case in a manner that will provide substantial monetary relief to the Class. The Class Members will receive additional pay per on-call shift worked, for the full three-year period (the largest period allowed by the FLSA) at their hourly or premium rate, plus

an additional fifty percent (50%) in additional damages. The evidence supports the additional allotted settlement hours per shift as a reasonable approximation of hours customer service representatives worked per shift. Thus, the recovery to the Class represents an outcome near the maximum allowed under the FLSA, while still accounting for the uncertainty inherent in further litigation.

The Settlement Agreement is a compromise, as neither party has received everything it demanded. Yet, by any measure, the relief the Class is receiving is substantial. Moreover, consideration of several additional relevant factors confirms that the proposed settlement is fair and reasonable.

### *(i)* *Substantial Obstacles Exist If The Litigation Continues, And The Settlement Offers Substantial, Immediate Relief.*

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's various defenses. If the litigation had continued, Plaintiffs would have faced many obstacles, including Defendant's motion to decertify the collective action and a trial. Further, even if Plaintiffs prevailed on the issue of liability, Plaintiffs faced obstacles in proving both the fact and amount of damages Plaintiffs suffered. The settlement compensates Class Members now and eliminates the possibility of a dismissal, summary judgment, decertification, loss at trial, or loss on appeal. Consequently, this settlement brings value now, as opposed to years from now, and provides a certainty of result. The substantial benefit that will be received by the Class immediately and made certain by the settlement is a significant factor weighing in favor of the Court's approval of the proposed settlement.

### *(ii)* *This Was A Complex Case*

This case certainly qualifies as complex, both in establishing liability and in proving damages. Many complex issues of fact and law remain unanswered and would have to be resolved

at trial. The pending trial would have been lengthy, costly and complex. Plaintiffs needed to provide evidence sufficient to establish liability, "willfulness," and damages on a class-wide basis. This would have required testimony from numerous trial witnesses and the potential for numerous depositions of individual Plaintiffs across the country regarding their work for Aerocare. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed settlement.

### *(iii) Plaintiffs' Counsel And All Named Plaintiffs Support The Settlement.*

Plaintiffs' counsel have gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed settlement. Based on their knowledge of the case and the applicable law, Plaintiffs' counsel believes the settlement is fair, reasonable and adequate. "Although the Court is not bound by the counsel's opinion, their opinion nevertheless is entitled to great weight." *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002). Additionally, the Named Plaintiffs have all indicated their approval of the Settlement Agreement.

**V. Named Plaintiffs And The FLSA Class Members Who Appeared For Deposition Should Receive Service Awards**

Under the Settlement Agreement, the Named Plaintiffs will each receive service fees of $5,000. The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (awarding $5,000 service award to each of four class representatives). Moreover, service awards are "particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the

benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding $10,000 out of class fund of $75,000).

Here, the service payments are being sought in recognition of the Named Plaintiffs' efforts to pursue the claims raised in this lawsuit on behalf of the Class, including, for example, by participating in mediation, providing factual information, answering written discovery, producing documents, sitting for depositions, and otherwise assisting Plaintiffs' counsel with the prosecution of the litigation. In light of the results obtained, there is no question that the Class Members have substantially benefited from the actions of these individuals. Further, the total service awards sought are small compared to the size of the class recovery. Accordingly, the requested service payments are amply justified.

## VI. Conclusion

The Parties reached this Settlement as the result of more than a year of contested litigation. The Settlement resolves a *bona fide* dispute between the Parties. The Parties engaged in discovery and analysis of pertinent information and resolved the issues between them with the assistance of Francis X. Neuner. The settlement is eminently fair, reasonable and adequate, and provides Class Members with significant monetary relief in a contested matter. For these reasons, the Court should approve the Settlement Agreement.

/s/ Matthew A. Clement
Matthew A. Clement   #43833
Kari A. Schulte        #57739
COOK, VETTER, DOERHOFF
  & LANDWEHR, P.C.
231 Madison
Jefferson City, MO  65101
(573) 635-7977
(573) 635-7414 – facsimile
mclement@cvdl.net
kschulte@cvdl.net

Ryan J. McDaniels     #63072
Kimberly J.Z. Guthrie #68147
NEWMAN, COMLEY & RUTH P.C.
601 Monroe Street, Suite 301
P.O. Box 537
Jefferson City, MO  65102
Telephone: (573) 634-2266
FAX:  (573) 636-3306
ryan.m@ncrpc.com
guthriek@ncrpc.com

*Attorneys for Plaintiff*


DYSART TAYLOR COTTER
McMONIGLE & MONTEMORE, P.C.


By: /s/Anne E. Baggot
Anne E. Baggott        MO#59187
4420 Madison Avenue, Suite 200
Kansas City, Missouri  64111
T: (816) 931-2700
F: (816) 931-7377
abaggott@dysarttaylor.com

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that the foregoing document was served this 1st day of May, 2020, using the Court's CM/ECR system, upon all counsel of record.

                                           /s/ Matthew A. Clement_____