## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

The parties to this Settlement Agreement and Release of Claims ("Agreement") are AeroCare Holdings, Inc. ("AeroCare") and Lori Hopkins and Kila Hagler (the "Representative Plaintiffs"), for themselves and on behalf of those persons who choose to participate in the settlement of the lawsuit *Hopkins v. AeroCare Holdings, Inc., et al.*, Case No. 2:19-cv-04054-NKL, currently pending in the United States District Court for the Western District of Missouri (the "Litigation"). Throughout the course of the Lawsuit, AeroCare has been represented by Anne E. Baggott of Dysart Taylor Cotter McMonigle & Montemore, P.C. ("AeroCare's Counsel"), and the Representative Plaintiffs and the class of all other alleged similarly situated employees have been represented by Cook Vetter Doerhoff & Landwehr, P.C. and Newman Comley & Ruth, P.C. ("Class Counsel").

### I.    DEFINITIONS

The terms set forth below shall have the meanings defined in this Section wherever used in this Agreement and in all of its exhibits, including the Notice of Collective Action Settlement and the Opt-In Form to FLSA Collective Class Members.

1.    **"Claims Administrator"** means CAC Services Group, LLC while conducting the claims administration of this Agreement. The parties agree that CAC Services Group, LLC will perform all of the duties customarily performed by a claims administrator, including (i) distributing the Notice of Collective Action Settlement and Opt-In Form to FLSA Collective Class Members; (ii) notifying the Parties of timely and untimely filings by the FLSA Collective Class Members; (iii) calculating the amounts due to each Settlement Participating Class Member based on the methodology and formula provided herein; (iv) processing all aspects, including tax reporting, of payments to Settlement Participating Class Members and other distributions; and (v) notifying the Parties of, and resolving any disputes regarding, claims by the Settlement Participating Class Members.

2.    **"FLSA Approval Date"** means the date the Court enters the Order Granting Approval of this FLSA settlement.

3.    **"FLSA Approval Order"** means the Order Granting Approval of Settlement, attached as **Exhibit A,** authorizing the distribution of the Notice of Collective Action Settlement and Opt-In Form, to the FLSA Collective Class Members.

4.    **"FLSA Collective Class Members"** is defined as all non-exempt hourly customer service representatives employed by a subsidiary of AeroCare Holdings, Inc. who worked an on-call at any time between March 15, 2016, and November 14, 2019, at the locations listed on **Exhibit B**.

5.    **"FLSA Covered Period"** means the period from March 15, 2016, to November 14, 2019.

6.    **"Settlement Notice and Opt-In Form"** means the Notice of Collective Action Settlement approved by the Representative Plaintiffs and AeroCare and subject to Court approval

in substantially the same form as **Exhibit C**, which the Claims Administrator shall distribute to the FLSA Collective Class Members.

7.     **"FLSA Settlement Back Pay Award"** means the amount of consideration allocated for the Settlement Participating Class Members under the terms of this Agreement by the calculation described in Section III of this Agreement.

8.     **"Settlement Participating Class Member"** means each of the FLSA Collective Class Members who submits to the Claims Administrator a timely and valid Settlement Notice and Opt-In Form that is signed and completed. All FLSA Collective Class Members who submit to the Claims Administrator a timely and valid Settlement Notice and Opt-In Form that is signed and completed, will be deemed Settlement Participating Class Members.

9.     **"FLSA Released Claims"** means any and all wage and hour and wage payment claims or claims arising out of or related to the Settlement Participating Class Members' employment with AeroCare, which any Settlement Participating Class Member may have against any of the Released Parties related to AeroCare's pay policies for time customer service representatives spent working or waiting to work while on-call, whether known or unknown, as a result of actions or omissions during the FLSA Covered Period, whether under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, including, but not limited to, the Fair Labor Standards Act, as amended, including any and all claims for unpaid overtime, liquidated damages, unpaid wages, deductions, breach of wage contracts, minimum wages, premium pay, interest, attorneys' fees, injunctive relief, or penalties..

10.     **"Parties"** means the Representative Plaintiffs, Settlement Participating Class Members, and AeroCare.

11.     **"Released Parties"** means Defendant AeroCare, its owners, parent and affiliated companies, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, insurers, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation.

## II.     RECITALS

1.     The Representative Plaintiffs filed a Complaint in this action against AeroCare, alleging that AeroCare violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, by utilizing a timekeeping practice that failed to pay the FLSA Collective Class Members for all hours worked, including overtime, as required by the FLSA.

2.     AeroCare denies that its timekeeping practices were improper or resulted in any unpaid wages or overtime and denies that it owes any unpaid wages or overtime compensation to the Representative Plaintiffs or any other person and denies that it has violated the FLSA, or any other law, rule or regulation relating to the payment of compensation and maintains that it has at all times properly compensated the Representative Plaintiffs and all other persons.

2

3. The Representative Plaintiffs and AeroCare have exchanged factual information and time records and conducted their own investigations, which have enabled each party to understand and assess the detail and substance of their respective claims and defenses.

4. A bona fide dispute exists between the Representative Plaintiffs and AeroCare as to the amount, if any, of unpaid wages and/or overtime owing to the Representative Plaintiffs and others similarly situated.

5. Class Counsel conducted a thorough investigation into the facts of the Litigation, including the discovery of documents concerning employment policies and procedures related to the allegations of the Representative Plaintiffs on behalf of the FLSA Collective Class Members, the exchange of payroll data of the FLSA Collective Class Members, and depositions of the parties, and diligently pursued an investigation of the FLSA Collective Class Members' claims against AeroCare. Based on their investigation and evaluation, the Representative Plaintiffs and Class Counsel are of the opinion that the payment amounts and the terms set forth in this Agreement are fair, reasonable and in the best interest of the FLSA Collective Class Members in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by AeroCare, and potential appellate issues.

6. It is the intention of the Parties that this Agreement shall constitute a (1) full and complete settlement and release of all FLSA Released Claims against all Released Parties; and (2) full and general release of any and all claims, including, but not limited to FLSA Released Claims, by the Representative Plaintiffs against all Released Parties.

7. The Representative Plaintiffs and AeroCare desire to enter into this Agreement, with the approval of this Court, to fully and finally settle, resolve and dismiss with prejudice this dispute, the Representative Plaintiffs' individual claims, and the FLSA Released Claims of Settlement Participating Class Members. Other than payment of the amounts set forth in this Agreement, AeroCare shall have no further financial obligation with respect to the FLSA Released Claims.

8. AeroCare denies any liability or wrongdoing of any kind associated with the claims alleged in the Litigation.

9. This Agreement is a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Parties or the Released Parties. The Parties further acknowledge and agree that this Agreement shall not be used to suggest an admission of liability in any dispute that any of the Parties may have now or in the future with respect to any person or entity. Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute, including, without limitation, the propriety of collective class treatment in any Litigation, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

10. This Agreement is contingent upon approval of the Court and the satisfaction of the other terms set forth in this Agreement. AeroCare does not waive, and instead expressly reserves, its right to oppose conditional or class certification and to challenge the propriety of conditional

or class certification for any purpose, should the Court not approve this Agreement and/or enter an FLSA Approval Order.

## III.  **AGREEMENT**

After due consideration of all relevant factors, including the matters contained in the recitals set forth above, the parties agree as follows:

### A.  **Consideration**

1.  AeroCare agrees to make the following payments to resolve the claims of Settlement Participating Class Members, including Representative Plaintiffs:

   a.  Where the Settlement Participating Class Member was assigned to work on-call on a weekly basis, Each Settlement Participating Class Member shall be paid the equivalent of 6 hours of time worked at the Member's applicable regular or overtime rate for each workweek the Member worked on-call. This amount will be multiplied by 1.5 to calculate a total gross amount of back pay. Settlement Participating Class Members assigned to work on-call on a weekly basis are those who worked at locations listed on Exhibit B that do not include the phrase (daily) behind the location name. Each Settlement Participating Class Member's back pay will be determined by the Claims Administrator in consultation with counsel for the parties.

   b.  Where the Settlement Participating Class Member was assigned on-call on a daily basis, the Member shall be paid the equivalent of 1 hour of time worked at the applicable regular or overtime rate for each day the Member worked on-call. This amount will be multiplied by 1.5 to calculate a total gross amount of back pay. Settlement Participating Class Members assigned to work on-call on a daily basis are those who worked at locations listed on Exhibit B that include the phrase (daily) behind the location name. Each Settlement Participating Class Member's back pay will be determined by the Claims Administrator in consultation with counsel for the parties.

   c.  Fifty percent (50%) of the payment to each Settlement Participating Class Member shall be deemed payment of alleged unpaid wages, subject to appropriate payroll withholdings, and reported on an IRS Form W-2. The remaining fifty percent (50%) of the payment shall be deemed compensation for liquidated damages pursuant to the FLSA, shall not be subject to payroll withholdings, and shall be reported on an IRS Form 1099. If any payments to Settlement Participating Class Members are returned by the postal service as undeliverable, AeroCare will assist Class Counsel in correcting any address errors and the payments will be promptly re-mailed to the correct address.

   d.  AeroCare will not oppose Class Counsel's application for an award of Eight Thousand Fifty Dollars and Zero Cents ($8,050.00) for costs and expenses. AeroCare agrees to, and will not contest, a fee award in the maximum amount of One Hundred Sixty-Five Thousand Dollars and No Cents ($165,000.00). Class

4

Counsel believes the fees should exceed that amount and will file a request for fees in excess of that amount with the Court. AeroCare reserves all rights to oppose this request. AeroCare will pay for all costs of the Claims Administrator and costs of notice to the FLSA Collective Class Members. Except for the fees, costs, and other expenses set forth in this section, the Parties shall bear responsibility for their own fees, costs and expenses incurred by them or arising out of the Litigation and will not seek reimbursement thereof from any party to this Agreement or the Released Parties.

e.   Representative Plaintiff Lori Hopkins, for her service to the FLSA Collective Class Members, will receive an award of Five Thousand Dollars and Zero Cents ($5,000.00) for acting as class representative and litigating this matter, including responding to discovery, producing documents, communicating with the FLSA Collective Class Members, giving a deposition and attending mediation. This amount will be considered non-wage damages for which AeroCare will issue to Representative Plaintiff an IRS Form 1099. This amount shall be in addition to any payments made to Lori Hopkins pursuant to paragraph III.A.1.a and will be administered at the same time and under the same terms provided for in section III.B.

f.   Representative Plaintiff Kila Hagler, for her service to the FLSA Collective Class Members, will receive an award of Five Thousand Dollars and Zero Cents ($5,000.00) for acting as class representative and litigating this matter, including responding to discovery, producing documents, giving a deposition and communicating with the FLSA Collective Class Members. This amount will be considered non-wage damages for which AeroCare will issue to Representative Plaintiff an IRS Form 1099. This amount shall be in addition to any payments made to Kila Hagler pursuant to paragraph III.A.1.a and will be administered at the same time and under the same terms provided for in section III.B.

g.   The Settlement Participating Class Members understand and agree that to the extent any liability exists for their federal, state and local income or other taxes, they will be solely responsible for the payment of such taxes assessed on the payment made under this Agreement. The Settlement Participating Class Members agree to indemnify and hold AeroCare free and harmless in connection with any liability incurred by AeroCare for any tax or taxes for which the Settlement Participating Class Members are responsible. Notwithstanding the above, nothing herein shall be interpreted to shift AeroCare's responsibility for employer payroll taxes on all W-2 wages paid to the Settlement Participating Class Members. The Settlement Participating Class Members do not agree to indemnify or hold AeroCare harmless related to those tax amounts. In the event AeroCare receives a claim from any governmental agency regarding the propriety of any terms and conditions of the Agreement, AeroCare will promptly notify the Settlement Participating Class Member. AeroCare makes no representations as to the tax treatment or legal effect of the payments and the Settlement Participating Class Members are not relying on any statement or representation of AeroCare in this regard.

h. The parties will cooperate and take all necessary steps to effectuate final judicial approval of this settlement. AeroCare agrees to consent to collective action certification for purposes of settlement only. AeroCare further agrees to share with Class Counsel any information necessary to confirm the fairness of this settlement and the accurate calculation of consideration among the Settlement Participating Class Members. Such information may include, but is not limited to, contact information (including all known email and last known physical mailing addresses), social security numbers (to be maintained as confidential and to be used solely for the purpose of locating FLSA Collective Class Members through skip-tracing), dates of employment, job titles, compensation data, time records, and related personnel information. The Representative Plaintiffs agree to share with AeroCare any information necessary to confirm the fairness of this settlement and effectiveness of the releases contemplated herein, including documents that confer upon the Representative Plaintiffs authority to bind the Settlement Participating Class Members to this Agreement.

i. Payments made under this Agreement are not intended to and will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under AeroCare's bonus, pension, or retirement programs or 401(k) plans maintained by Released Parties, or their parents, subsidiaries, or affiliates. Nor will such payments count as earnings or compensation with respect to, or be considered to apply to, or be applied for purposes of AeroCare's bonus, pension, and retirement programs or 401(k) plans maintained by Released Parties, their parents, subsidiaries, or affiliates. AeroCare retains the right, if necessary, to modify the language of its benefit plans and pension, bonus and other programs, if necessary, to make clear that any amounts paid pursuant to this Agreement are not for hours worked, hours paid or any similar measuring term as defined by any plans and programs for purposes of eligibility, vesting, benefit accrual or any other purpose.

## B. <u>Notice to FLSA Collective Class Members and Opt-In Procedures</u>

1. Within sixty (60) days after the FLSA Approval Date, the Claims Administrator will send the Settlement Notice and Opt-In Form, attached as **Exhibit C**, and a current W-9 form, to FLSA Collective Class Members by First Class mail and electronic mail ("e-mail") for the FLSA Collective Class Member, including all known work and personal email addresses and last known mailing addresses. With respect to envelopes returned within fifteen (15) days of mailing, the Claims Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address within ten (10) days of the receipt of the returned envelope. The FLSA Notice shall be deemed received once it is mailed for the second time. The Claims Administrator will send one reminder notice, by First Class mail and e-mail, to FLSA Collective Class Members who have not returned the required Settlement Notice and Opt-In Form and IRS Form W-9, (30) days before the deadline.

2. To participate in the settlement and become Settlement Participating Class Members, FLSA Collective Class Members must properly and timely (1) execute and return to the Claims Administrator a Settlement Notice and Opt-In Form, attached as Exhibit C, which releases

6

and waives wage and hour claims related to work performed or time spent while on-call during the FLSA Covered Period, and (2) provide the Class Administrator with a fully executed IRS Form W-9. Each FLSA Collective Class Member will have sixty (60) days from the date of the mailing of Settlement Notice and Opt-In Form to exercise their option to participate in the settlement and return the required Settlement Notice and Opt-In Form and IRS Form W-9. Payment to the Settlement Participating Class Members will be made within thirty (30) days after the settlement Opt-In period has closed.

3. Settlement Participating Class Members shall have one hundred and eighty (180) calendar days after mailing of the payments to them to cash the checks containing the payments. The checks shall clearly state this deadline on their face. If any Settlement Participating Class Member does not cash their check within that 180-day period, such checks will be void and a stop-pay notice will be placed. In such event, those Settlement Participating Class Members will be deemed to have irrevocably waived any right in or claim to the payment, and this Agreement will be binding upon them.

C. **Release of Claims**

1. In exchange for the settlement amounts provided herein, each Settlement Participating Class Member, through the Representative Plaintiffs, **RELEASES** and **FOREVER DISCHARGES** AeroCare, its affiliates and subsidiaries, and their past, present and future agents, officers, directors, employees, and insurers, and the Released Parties from any and all claims, damages, and liabilities of any nature or origin whatsoever now existing for unpaid overtime, minimum, or hourly wages from his or her employment with AeroCare during the FLSA Covered Period related to their work or time spent while on call during the FLSA Covered Period, including but not limited to claims for equitable relief, compensatory, punitive or other damages, expenses (including attorney's fees), or costs of any kind, arising before the Representative Plaintiffs' execution of this Agreement. The claims that Settlement Participating Class Members are releasing include all claims that were raised or could have been raised by the Representative Plaintiffs in the Litigation for overtime compensation or minimum or hourly wages for work performed or time spent while on-call pursuant to the Fair Labor Standards Act, 29 U.S.C § *et seq.* and any other overtime, minimum or hourly wage-related recovery provision of federal, state, or local constitution, law, regulation ordinance or common law, and any other applicable state wage and hour law.

2. In exchange for the consideration described herein, Representative Plaintiffs **RELEASE** and **FOREVER DISCHARGE** AeroCare, its affiliates and their past, present and future agents, officers, directors, and employees, and the Released Parties from any and all claims, damages, and liabilities of any nature or origin, including, but not limited to, any rights and claims under the Missouri Minimum Wage Law, Title VII of the Civil Rights Act, the Employment Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Family & Medical Leave Act, the Age Discrimination in Employment Act, the Age Discrimination in Employment Act Amendments of 1990 (sometimes known as the "Older Workers Benefit Protection Act"), the Equal Pay Act of 1963, the Worker Adjustment Retraining Notification Act of 1988, and all amendments thereto, and any claim under any local, state or federal statute, regulation, rule, ordinance or common law, breach of contract claims, breach of any collective bargaining agreement claims, tortious interference, assault and battery

and any other intentional tort, and all demands, damages, expenses, fees (including attorney's fees, court costs, expert witness fees, etc.), which Representative Plaintiffs may have against AeroCare and the Released Parties, including, but not limited to, claims on account of, arising out of, or in connection with all interactions, communications, transactions, relationships, or contracts, express or implied, between Representative Plaintiffs and AeroCare and the Released Parties, including, but not limited to, Representative Plaintiffs' employment relationship with AeroCare and the termination thereof, through the date of this Agreement. Nothing contained herein shall be deemed to be a waiver of Representative Plaintiffs' rights to any vested benefits in any benefit plan offered by AeroCare.

3. Representative Plaintiffs acknowledge that:

   a. Representative Plaintiffs are specifically releasing any and all claims, whether known or unknown, which are based on the Age Discrimination in Employment Act;

   b. This Agreement does not waive rights or claims that arise after the date this Agreement is executed;

   c. Representative Plaintiffs have signed this Agreement of Representative Plaintiffs' own free will in exchange for the consideration stated above, which Representative Plaintiffs acknowledge constitutes full, fair, reasonable and adequate consideration, to which Representative Plaintiffs are not otherwise entitled, for the affirmations, certifications, representations and promises made herein;

   d. Representative Plaintiffs have carefully read and fully understand all the provisions of this Agreement, including this Section C.3 of this Agreement and that Representative Plaintiffs have been afforded at least twenty-one (21) days to consider the terms hereof;

   e. Representative Plaintiffs have been advised in writing by this Agreement that Representative Plaintiffs should consult with an attorney prior to executing this Agreement;

   f. Representative Plaintiffs understand and agree that this Agreement shall not become effective or enforceable until seven (7) calendar days after it is executed by Representative Plaintiffs and during that seven (7) day period (the "Revocation Period") Representative Plaintiffs may revoke this Agreement. If Representative Plaintiffs wish to revoke this Agreement, Representative Plaintiffs agree to do so in writing within seven (7) days and deliver such written notice of Representative Plaintiff's intent to revoke to Anne E. Baggott, Esquire, Dysart Taylor Cotter McMonigle & Montemore, P.C., 4420 Madison Ave., Suite 200, Kansas City, Missouri 64111. If either Representative Plaintiff does not timely revoke, this Agreement goes into force and effect on the eighth day following its execution and upon Court approval; and

   g. Representative Plaintiffs also understand that should Representative Plaintiffs decide to revoke this Agreement within seven (7) days of signing, the Agreement will not be

8

effective and the monies and other consideration which AeroCare has promised to provide Representative Plaintiffs shall not be paid or provided.

**D.      No Assignment**

Class Counsel and the Representative Plaintiffs, on behalf of the FLSA Collective Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**E.      Non-Admission of Liability**

By entering into this Agreement, AeroCare in no way admits and expressly denies that any violation of law or any liability whatsoever is owed to the Representative Plaintiffs and the FLSA Collective Class Members, individually or collectively. AeroCare further in no way admits and expressly denies that collective class treatment is appropriate in this matter. Rather, AeroCare enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with the Representative Plaintiffs and the FLSA Collective Class Members. The Parties understand and agree that neither this Agreement, nor the negotiations that preceded it, shall be used as evidence with respect to the claims asserted in the Litigation or in any other proceeding or dispute.

**F.      Court Approval of Settlement and Dismissal of Case**

The Representative Plaintiffs and AeroCare agree to jointly seek the Court's approval of the terms of this Agreement. Each Settlement Participating Class Member, through the Representative Plaintiffs, agrees to cooperate, and participate as necessary, in any proceedings related to the Court's approval of the terms of this Agreement. Each Settlement Participating Class Member, through the Representative Plaintiffs, also agrees to dismiss the Litigation with prejudice, on the condition that the Court retain jurisdiction to administer and enforce the terms of this Agreement.

As soon as practical and without undue delay, the parties will submit to the Court a joint motion for approval of the Agreement and authorization of notice of settlement.

**G.      Covenant Not to Sue**

Each Settlement Participating Class Member, through the Representative Plaintiffs, on their own behalf and on behalf of their heirs, executors, administrators, successors, and assigns, covenants and agrees never to commence, aid in any way, prosecute, or cause to be commenced or prosecuted, any action or other proceeding, whether in a representative or individual capacity or as a member of a collective/class action, against AeroCare, its agents, representatives, servants, employees, insurers, affiliates, subsidiaries, parents, shareholders, predecessors, successors, and assigns for any and all liability, claims, demands, causes of action, suits, debts, charges, complaints, obligations, promises, agreements, controversies, damages, and expenses (including attorneys' fees and costs) of any nature whatsoever, known or unknown, in law or equity, in connection with any of the facts alleged or that could have been alleged or liabilities or damages sought or that could have been sought related to or arising out of the Settlement Participating Class

Members' FLSA Released Claims. Nothing contained herein shall affect any Settlement Participating Class Member's ability to testify truthfully.

### H.     Represented by Counsel

The Parties stipulate and acknowledge that each has been represented by counsel throughout the litigation and settlement process of this dispute and have decided with the advice of counsel and free of any duress or coercion to enter into this Agreement. The Parties stipulate and acknowledge that they have read this Agreement and understand its terms. The Parties also acknowledge that this Agreement was jointly prepared and/or reviewed by them, by and through their respective legal counsel, and any uncertainty or ambiguity existing herein shall not be interpreted against either of the Parties, but otherwise according to the application of the rules on interpretation of contracts.

### I.     Representative Plaintiffs' Authorization to Class Counsel

Class Counsel, on behalf of the Settlement Participating Class Members, is expressly authorized by the Representative Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Participating Class Members pursuant to this Agreement to effectuate its terms, and is expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Participating Class Members that Class Counsel deems appropriate.

### J.     Mutual Full Cooperation

The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

### K.     Governing Law

This Agreement shall be interpreted under the laws of the State of Missouri and shall be binding on the parties hereto, their successors and assigns. Jurisdiction and venue for any action arising out of this Agreement shall be solely in the United States District Court for the Western District of Missouri.

### L.     Entire Agreement

The Parties agree that this is the entire agreement concerning the settlement of the disputes described above, and that no representations or inducements have been made by either side except as set forth herein. This Agreement cannot be amended, modified, or supplemented in any respect except by written agreement entered into by both Parties.

### M.     Counterparts

This Agreement may be signed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Any photocopy

of the executed original or of any counterpart shall be deemed to be an original for any and all purposes. The Parties also agree that the executed counterparts may be delivered to the other Party by email transmission, which shall be deemed an original copy.

**N.**     <u>**Severability of Provisions**</u>

The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

**O.**     <u>**Successors/Assigns**</u>

This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

**P.**     <u>**Authority**</u>

The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof, subject to Court approval.

**Q.**     <u>**Interpretations**</u>

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

**R.**     <u>**Settlement of Disputes**</u>

All disputes relating to this Agreement and its implementation shall be within the continuing jurisdiction of the Court over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

<u>**SIGNATURES APPEAR ON NEXT PAGE**</u>

11

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date

indicated below:

Dated: 4/30 , 2020        By: _Lori Hopkins_ (signature)
                          **Lori Hopkins, Representative Plaintiff**


Dated: _____, 2020     By: _____
                          **Kila Hagler, Representative Plaintiff**


Dated: 4-30 , 2020        By: _____

                          Name Printed: _Jacques Schira_

                          Title: _VP Admin & CCO_

                          **AeroCare Holdings, Inc.**


Approved:

By: _Anne Baggott_ (signature)        By: _____
Anne E. Baggott, MO #59187            Matthew Clement, MO #43833
Dysart Taylor Cotter McMonigle &      Cook Vetter Doerhoff & Landwehr, P.C.
Montemore, P.C.                       Attorney for Representative Plaintiffs
4420 Madison Ave., Suite 200          and FLSA Collective Class Members
Kansas City, MO 64111
Attorney for Defendants               Dated:_____

Dated: _____

                                      By: _____
                                      Ryan McDaniels, MO #63072
                                      Newman Comley & Ruth, P.C.
                                      Attorney for Representative Plaintiffs
                                      and FLSA Collective Class Members

                                      Dated:_____

13

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date

indicated below:

Dated: __4 / 30__, 2020

By: _~~Lori Hopkins~~_

**Lori Hopkins, Representative Plaintiff**

Dated: _____, 2020

By: _____

**Kila Hagler, Representative Plaintiff**

Dated: _____, 2020

By: _____

Name Printed: _____

Title: _____

**AeroCare Holdings, Inc.**

Approved:

By: _____
Anne E. Baggott, MO #59187
Dysart Taylor Cotter McMonigle &
Montemore, P.C.
4420 Madison Ave., Suite 200
Kansas City, MO 64111
Attorney for Defendants

Dated: _____

By: _____
Matthew Clement, MO #43833
Cook Vetter Doerhoff & Landwehr, P.C.
Attorney for Representative Plaintiffs
and FLSA Collective Class Members

Dated: _____

By: _____
Ryan McDaniels, MO #63072
Newman Comley & Ruth, P.C.
Attorney for Representative Plaintiffs
and FLSA Collective Class Members

Dated: _____

13

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: _____, 2020

By:_____
**Lori Hopkins, Representative Plaintiff**

Dated: _____, 2020

By:_____
**Kila Hagler, Representative Plaintiff**

Dated: _____, 2020

By:_____

Name Printed: _____

Title: _____

**AeroCare Holdings, Inc.**

Approved:

By: _____
Anne E. Baggott, MO #59187
Dysart Taylor Cotter McMonigle &
Montemore, P.C.
4420 Madison Ave., Suite 200
Kansas City, MO 64111
Attorney for Defendants

Dated: _____

By: /s/Matthew Clement
Matthew Clement, MO #43833
Cook Vetter Doerhoff & Landwehr, P.C.
Attorney for Representative Plaintiffs
and FLSA Collective Class Members

Dated: 5/1/2020

By: /s/Ryan McDaniels
Ryan McDaniels, MO #63072
Newman Comley & Ruth, P.C.
Attorney for Representative Plaintiffs
and FLSA Collective Class Members

Dated: 5/1/2020

12

**EXHIBIT A**

**ORDER**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

LORI HOPKINS, et al.

    v.

AEROCARE HOME MEDICAL
EQUIPMENT, INC., et. al.

    Defendants.

)
)
)
)
)
)
)
)

Case No. 2: 19-CV-04054-NKL

JURY TRIAL DEMANDED

**FINAL ORDER APPROVING SETTLEMENT**

Before the Court is Plaintiffs' Unopposed Motion for Class Certification, Appointment of

Class Representatives, Appointment of Class Counsel and Approval of Notice to Putative Class

Members ("Unopposed Motion for Class Certification") and Memorandum in Support (Docs. __)

and the parties' Joint Motion for Approval of FLSA Collective Action Settlement (Doc. _____).

Attached to Plaintiffs' Motion for Approval of Collective Action Settlement is the Parties' proposed

Settlement Agreement and Release of Claims (Doc. _____) and the Proposed Notice to Putative

Class Members (Doc. _____).

WHEREOFORE, the Court having fully and carefully reviewed the Motions and proposed

Settlement Agreement and Release of Claims ("Settlement Agreement") ORDERS as follows:

1.      Plaintiffs' Unopposed Motion for Class Certification (Doc. __) is GRANTED, in

all respects.

2.      That the proposed Settlement Agreement is the result of contested litigation and

represents a fair, reasonable, and adequate resolution of a bona fide dispute.

3.      That the Settlement Agreement is in the best interests of the FLSA Collective Class

Members, in light of the benefits accruing to the Class, the substantial discovery and investigation

1

conducted by Class Counsel prior to the proposed settlement, and the complexity, risk, expense, and possible length of time of continued litigation.

4.     The Parties' Joint Motion for Approval of FLSA Collective Action Settlement (Doc. ____) is GRANTED.  The Settlement Agreement, which is attached as Exhibit ____ to Doc. _____, is APPROVED.

5.     The formula and method for distribution of notice to Class Members and disbursement of settlement payments set forth in the Settlement Agreement is APPROVED, as a fair, equitable, and reasonable measure for contacting Class Members and distributing the settlement payments to the Class Members.  Defendants shall fund the Settlement as set forth in the Settlement Agreement.

6.     That _____ is APPOINTED and APPROVED as the Claims Administrator in this matter.

7.     That the Notice of Collective Action Settlement and Consent to Join Form, attached to the Settlement Agreement as Exhibit C, is APPROVED.

8.     That the unopposed requested service award of Five Thousand Dollars ($5,000.00) paid to each Representative Plaintiff (paid by Defendants to each Plaintiff Lori Hopkins and Plaintiff Kila Hagler) is APPROVED and ORDERED to be paid under the terms of the Settlement Agreement.

9.     That the Parties have not come to an agreement regarding Plaintiffs' Motion for Attorneys' Fees (Doc. ____).  As such, that Motion is taken under advisement by this Court and will be addressed by separate Order.

10.    Upon a decision on Plaintiffs' Motion for Attorneys' Fees, this Court will enter a judgment dismissing this matter with prejudice.  Without affecting the finality of that judgment of

2

dismissal in any way, the Court will reserve continuing and exclusive jurisdiction over this matter

for the purpose of resolving issues relating to the administration, implementation, and enforcement

of the Settlement Agreement and the conditions contained in this Order.

_____
Date

_____
The Honorable Nanette K. Laughrey
United States District Judge

3

**EXHIBIT B**

1. Alamosa 10-61 (daily)
2. Amarillo 12-41 (daily)
3. Burlington 10-56 (daily)
4. Canon City 10-62 (daily)
5. Cheyenne 10-196
6. Childress 12-42 (daily)
7. Colorado Springs 10-119 (daily)
8. Columbia 03-345
9. Denver 10-55
10. Galesburg 69-311
11. Gulfport 94-404
12. Houston North 05-24
13. Huntsville 6-352
14. Hutto 12-036
15. Jefferson City 03-123
16. Kansas City 03-340
17. Kirksville 03-77
18. Lafayette 10-91 (daily)
19. La Junta 10-57 (daily)
20. Lebanon 03-81
21. Macon 61-291
22. Marshall 90-358
23. Nevada 03-112
24. Nixa 03-100

25. Oklahoma City 04-204
26. Orlando 21-141
27. Pasadena 05-212
28. Pelham 06-207
29. Pensacola 95-406
30. Peoria 69-312
31. Petersburg 50-248
32. Pueblo 10-60 (daily)
33. Salida 10-59 (daily)
34. Silverthorn 10-247 (daily)
35. Slidell 101-413
36. Tallahassee 33-197
37. Trinidad 10-63 (daily)
38. Waco (South Texas) 04-016
39. Warner Robins 73-321
40. Windsor 10-118 (daily)

**EXHIBIT C**
**NOTICE AND CONSENT TO JOIN**

## ***** SETTLEMENT NOTICE *****

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE ENTITLED TO <u>PAYMENT</u> THROUGH A SETTLEMENT WITH AEROCARE (AND ITS SUBSIDIARIES). YOU MUST <u>TAKE ACTION</u> TO RECEIVE PAYMENT – SEE BELOW:**

**Customer Service Representatives** employed by certain Aerocare entities at any time between **March 15, 2016 and November 14, 2019**, who were not paid an hourly wage for on-call time (i.e., a dollar amount directly corresponding to hours worked), are eligible to receive **<u>payment</u>** through the **<u>Settlement</u>** explained in this Notice.

**YOU <u>MUST</u> SIGN AND RETURN THE CONSENT TO JOIN (BELOW) TO RECEIVE A SETTLEMENT PAYMENT.**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

- AeroCare records indicate you are eligible to receive a payment through the Court-approved Settlement reached in *Hopkins v. Aerocare Holdings, Inc., et al.*, Case No. 2:19-cv-04054-NKL. In that (now-settled) lawsuit, two former Customer Service Representatives ("CSRs") sued AeroCare Holdings, Inc. and its subsidiaries, claiming improper payment for on-call time.

- **You are eligible for a Settlement payment <u>even if</u> you were paid an incentive fee, base pay or other type of lump-sum payment for on-call time. This Settlement is in addition to that pay.**

- The <u>Settlement payment</u> available to eligible CSRs (who timely submit Consent to Join forms – below) is **<u>1.5 times</u>** their "back wages," for time from 3/15/16 to 11/14/19, calculated as follows:

  - Participating CSRs who were assigned "weekly" on-call shifts will be paid <u>6 additional hours</u> added to each respective workweek during which they took a qualifying on-call shift;

  - Participating CSRs who were assigned "daily" on-call shifts will be paid an additional <u>1 hour</u> added to each day they took a qualifying on-call shift;

  - The settlement hours added will be paid at the overtime rate if applicable;

  - One-half of the Settlement payment will be considered W-2 wages (thus subject to proper withholdings). The other half will be considered "liquidated damages" (not subject to withholdings).

- **You must join the settled lawsuit in order to receive money through the Settlement. The <u>DEADLINE</u> to join by submitting your "Consent to Join" form below is _____.**

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT/LAWSUIT

| | |
|---|---|
| **ASK TO BE INCLUDED** (the only way to get payment from the Settlement) | **Join in this settled lawsuit. Receive payment under the terms of the settlement. Waive and release any separate right you may have to file suit over the same matters.**<br><br>Eligible CSRs timely joining this settled lawsuit will receive money for back wages for on-call shifts (as described above). Those hours will be paid at the employee's respective wage rate (at the over-time rate, if applicable). The back wages will be multiplied by 1.5 to arrive at the full, gross settlement payment. CSRs who participate in the settlement release and waive their right to individually sue AeroCare (and its affiliates) for the same or similar conduct. Additional information about the settlement and now-settled lawsuit may be found at www.nameofsite.com.<br><br>**For example:** Jane Doe is a full-time CSR. She typically works 40 hours per week, during regular business hours, in the office, at a wage rate of $16 per hour. Between March 15, 2016 and November 15, 2019, Jane also worked 10 weekly on-call shifts - outside of normal business hours. She was not paid an hourly rate for on-call time. Instead, she was paid an incentive fee of $200 for each "on-call" week.<br><br>If Jane Doe joins this settled lawsuit, she would be entitled to **sixty hours** of back wages, **multiplied by 1.5**. Assuming she worked forty (40) office hours during each of the "on-call" weeks, her settlement payment would be calculated as follows: 60 hours x $24 (her overtime rate) = $1,440. Multiplying that by 1.5 gives Jane a gross settlement payment of **$2,160**. Jane **must join this settled lawsuit** by timely submitting the **Consent to Join** form below in order to receive the settlement payment.<br><br><u>If you want to be **INCLUDED** in this settled lawsuit to receive your Settlement payment, you **MUST** complete the **"Consent to Join"** form at the end of this Notice and **submit it** by email or mail so that it is received **by _____ [DATE]**.</u> |
| **DO NOTHING** | **Do nothing. Get no Settlement benefits. Maintain certain rights.**<br><br>If you do nothing, you will not share in the Settlement. But, you keep any rights you otherwise would have, such as to possibly sue AeroCare separately about the same legal claims. However, please be aware that your individual claim will be subject to a statute of limitations that may either bar your individual claim or reduce the amounts you would be entitled to receive. |

## BASIC INFORMATION / FREQUENTLY ASKED QUESTIONS

**1. Why did I get this Notice?**

AeroCare's records indicate you worked at least one on-call shift as a Customer Service Representative between March 15, 2016 and November 14, 2019, for which you were not paid an hourly wage. The purpose of this Notice is (1) to inform you of a settled collective action lawsuit against AeroCare in which you have the right to participate; (2) it also explains what you need to do to participate to seek your settlement payment, and how your rights may be affected. Additional information, including a list of Aerocare locations involved in the Settlement, is available at www.nameofsite.com.

On ____, 2020, the Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, authorized this Notice to inform you about this settlement and your right to join.

**2. What did the now-settled lawsuit seek?**

Two customer service representatives (the Plaintiffs) filed suit, alleging they were not properly compensated for on-call time. They were paid incentive fees, but were not paid hourly for time spent working while on-call (and as such, were not paid overtime for time spent working while on-call). They alleged that they (and other AeroCare employees) should have received their hourly pay for such time, including overtime pay as applicable.

The Plaintiffs claimed that because AeroCare did not pay employees as required under the law, they (and all others with similar claims), were owed unpaid back wages (including overtime), as well as additional damages as allowed by law, and that AeroCare should be responsible for all attorneys' fees as well.

**3. How did/does AeroCare respond?**

AeroCare denied, and continues to deny, it violated any laws in paying its employees and asserts it paid employees properly, but has agreed to this settlement to end the litigation.

**4. Has the Court decided who is right?**

No. The case settled before the Court reached a decision on the merits.

**5. How do I join?**

To participate in this lawsuit and its settlement, you must complete the Consent to Join Form located at the end of this Notice and either email it to _____ or mail it to _____ in the enclosed, self-addressed stamped envelope. You must send it (by either method) such that it is received by no later than __[date]___.

The decision to join or not join is entirely your own. If you fail to join, you will not participate in the settlement. However, you may still file your own lawsuit, assuming such claim is not otherwise barred. **Statutes of Limitations could bar your individual claim or reduce the amount you might be able to receive if you do not join this settlement.**

**6. I am afraid AeroCare may take some action against me if I join.**

The law forbids AeroCare (and any of its subsidiaries/related companies) from retaliating against those who join the suit. AeroCare willingly settled the lawsuit and joined in asking the

Court to approve the Settlement.

**7.  <u>Do I have a lawyer in this case?</u>**

Two law firms represent the Plaintiffs.  They were appointed by the Court to also represent the collective class (all eligible CSRs who join in the settled lawsuit to obtain their settlement payment).  They are Cook, Vetter, Doerhoff & Landwehr, P.C. and Newman, Comley and Ruth, P.C.  Both are located in Jefferson City, Missouri, where the settled case is pending, and are experienced in handling similar cases.  More information about the firms and their experience is available at www.cvdl.net and www.ncrpc.com.  As the Court has appointed these lawyers to represent the class, if you join, these lawyers will represent you.

**8.  <u>How will the lawyers be paid?</u>**

The attorneys have asked the Court to award their fees and the case expenses to be paid by AeroCare.  You will not have to pay these fees and expenses separately.

**9.  <u>Should I get my own lawyer?</u>**

If you choose to join the case, the lawyers who filed the case will represent you as well, so you do not need to obtain your own lawyer.  However, you may hire you own lawyer if you choose, but you will have to make arrangements to pay that lawyer on your own.

**10. <u>Is more information available?</u>**

Yes.  Please visit www.nameofsite.com.  If you still have questions or wish to receive more information about your rights, you may also contact the Plaintiffs' attorneys at:

Kimberly J.Z. Guthrie
Newman, Comley & Ruth, P.C.
601 Monroe Street, Suite 301
P.O. Box 537
Jefferson City, Missouri 65101
(573) 634-2266
guthriek@ncrpc.com

Kari A. Schulte
Cook, Vetter, Doerhoff & Landwehr, P.C.
231 Madison Street
Jefferson City, Missouri  65101
(573) 635-7977
kschulte@cvdl.net

IF YOU WISH TO JOIN THE SETTLED CASE TO PARTICIPATE IN THE SETTLEMENT, YOU MUST COMPLETE THE CONSENT TO JOIN FORM ON THE FOLLOWING PAGE AND RETURN IT BY EMAIL (_____) OR MAIL (_____) SUCH THAT IT WILL BE RECEIVED ON OR BEFORE __DATE__.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| LORI HOPKINS, individually and<br>on behalf of others similarly situated,<br><br>and<br><br>KILA HAGLER, individually and<br>on behalf of others similarly situated,<br><br>v.<br><br>AEROCARE HOME MEDICAL<br>EQUIPMENT, INC., et. al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 2: 19-CV-04054-NKL<br>)<br>)<br>)<br>)<br>) |

## CONSENT TO JOIN

I authorize the filing of this Consent, and the filing and prosecution of claims in my name and on my behalf to contest the Defendants' failure to pay me certain wages and/or overtime as brought by these proceedings. By joining this lawsuit, I designate the Plaintiffs Lori Hopkins and Kila Hagler, as well as, Cook, Vetter, Doerhoff & Landwehr, P.C. and Newman, Comley and Ruth, P.C. ("Class Counsel"), to the fullest extent possible, to make decisions on my behalf concerning the case, the method and manner of conducting the case and the resolution/administration of any associated settlement. While I have the right to choose other counsel and to pursue my claims on my own behalf, I choose to be represented by Class Counsel. I understand this case has been settled and that by participating in the settlement, I waive and release my ability to separately bring claims for wages for on-call time during March 15, 2016 to November 14, 2019, pursuant to the settlement agreement. If the Court-approved settlement existing at the time of my signing of this Consent to Join were to fail for some reason, I authorize my claims to be pursued as stated above.

Date: _____     _____
                                                                   Signature

**Please print or type the following information**:

Print Name: _____

Location of AeroCare Employment:_____

Dates of Employment (approx.: _____ )

Home Address: _____

Telephone Numbers: (home) _____ (mobile) _____

E-mail address: _____