IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| LORI HOPKINS, et al., <br>                          Plaintiffs, <br><br> v. <br><br> AEROCARE HOME MEDICAL EQUIPMENT, INC., et. al. <br>                          Defendants. | Case No. 2: 19-CV-04054-NKL |

**ORDER**

Plaintiffs move for attorneys' fees, costs, and service awards following settlement of this Fair Labor Standards Act ("FLSA") collective action. Defendants concede that Plaintiffs are entitled to attorneys' fees, but they contest the amount of fees due to Plaintiffs. Defendants do not contest the costs and service awards that Plaintiffs seek. For the reasons discussed below, Plaintiffs' motion for fees, costs, and service awards is granted in part and denied in part.

**I.  Background**

Plaintiffs filed this case on behalf of Lori Hopkins and all other similarly situated employees on March 5, 2019, after what their counsel describe as "significant investigation and legal research," asserting two claims under FLSA, for failure to pay minimum wage and failure to pay overtime. Doc. 1 (Complaint); Doc. 74 (Plaintiffs' Suggestions in Support of Motion for Fees), p. 2. Plaintiffs sued three defendants: AeroCare Home Medical Equipment, Inc., AeroCare Employee Benefits, Inc. (a Florida corporation that issued Ms. Hopkins' paychecks), and AeroCare Holdings, Inc. (a Florida corporation that acts as a "holding company"). Doc. 1.

Defendants moved to dismiss the complaint, arguing that Plaintiff had not adequately pleaded facts establishing that they were employers of Ms. Hopkins or the proposed class. After

the motion to dismiss was fully briefed (Docs. 16, 18, 26), the Court denied the motion, finding that "Plaintiffs have sufficiently pleaded an employment relationship to withstand Defendants' Rule 12(b)(6) motion." Doc. 28, p. 4.

On June 25, 2019, the parties participated in court-ordered mediation for nearly a full day. Doc. 74, p. 2. Defendants took the position that the payment scheme alleged in the Complaint was isolated to Missouri and that no entity other than AeroCare Home Medical Equipment, Inc. (the Missouri corporation) could be an employer of Plaintiff Hopkins under the FLSA. Doc. 74, pp. 2-3. They further argued that any class could consist of only employees in Missouri. *Id.* p. 3. The case did not settle at mediation. *Id.*

In their answer to the complaint, filed July 1, 2019, the Florida-corporation Defendants, AeroCare Holdings, Inc. and AeroCare Employee Benefits, Inc., denied that they were employers under the FLSA and that they were liable to Plaintiffs or the proposed class for any unpaid wages. *See* Doc. 31, ¶¶ 17-18. They asserted at least sixteen affirmative defenses, which included assertions that Defendants were not employers, that any violation was not willful, that all actions were taken in good faith, that Plaintiffs "consented" to the unlawful conduct, that the named Plaintiffs were not adequate representatives, and that Plaintiff and other customer service representatives were not subject to the same or similar pay practices while working for those defendants. *Id.*, ¶ 2, 79, 11-12, 14-16.

On July 25, 2019, Plaintiff sought leave to file a First Amended Complaint adding another plaintiff, Kila Hagler. Doc. 33. Defendants did not oppose the motion, and the Court granted leave to amend. Doc. 34. The Amended Complaint was filed on August 18, 2019. Doc. 35.

The parties engaged in discovery. Initially, the defendants produced only discovery related to Missouri employees, rather than nationwide employees. Doc . 74, p. 3. After some discussions,

Defendants produced some information about the nationwide operations and the corporate structure of AeroCare (contained in the over 8,000 pages of documents that were eventually produced).

A dispute between the parties concerning the corporate representative deposition required the Court's intervention. The parties had agreed to conduct the deposition on November 26, 2019. However, on November 19, 2019, Defendants objected to six (6) of the seven (7) topics—topics Plaintiffs had provided on October 21, 2019. Plaintiffs sought the Court's intervention. Following a teleconference, the Court largely overruled Defendants' objections. Doc. 57.

Plaintiffs state that they "built a case establishing many customer service representatives working through Defendant AeroCare Holdings' seventy-five (75) plus subsidiaries across the country were subjected to the same, or very similar, on-call pay practices as the Missouri subsidiary" after performing "much work untangling the complicated corporate scheme of Defendants, wading through payroll records of hundreds of customer services representatives throughout the country (consisting of thousands of pages), as well as significant legal analysis." Doc. 74, p. 4. Defendants paint a different picture, stating that the corporation representative deposition, "[a]long with Defendants' responses to Plaintiffs' written discovery on these topics, including an extensive, verified spreadsheet describing the on-call pay practices at nearly 300 locations," provided all of the information that Plaintiffs required "to decipher the corporate structure or Defendants' pay practices." Doc. 77 (Defendants' Opposition to Plaintiffs' Motion for an Award of Attorneys' Fees), p. 2.

In January 2020, Plaintiffs sought depositions of Aerocare executives and asserted that the corporate representative whom they had deposed had not been adequately prepared to address

3

some of the enumerated topics, and therefore another Rule 30(b)(6) deposition would be necessary. Doc. 74, p. 4. At that point, Defendants began to negotiate a settlement of nationwide claims. *Id.*

On January 6, 2020, Plaintiffs moved for class certification. Docs. 61, 62. The deadline for Defendants to respond to the motion for class certification was extended and then stayed when, on or about February 25, 2020, after nearly a month of negotiations, the parties reached a class-wide settlement in principal. Docs. 63-67; Doc. 74, p. 4. The parties agreed to certification of a collective of 100 customer service representatives at 40 locations in 11 states. ECF 70, 70-1, 71. At the time that the settlement was reached, Plaintiffs estimated that their legal fees to that date totaled $165,000.

From February 25, 2020 through at least the date on which the motion for fees was filed, the parties continued to negotiate and finalize the details of that settlement. *Id.* Plaintiffs then drafted a new, unopposed motion for class certification and joint motion for approval of the settlement.

## II. Discussion

### A. Fees

Defendants agreed not to contest Plaintiffs' motion for a fee award up to $165,000, but they reserved their right to contest fees sought in excess of that amount. Doc. 77, p. 2. Plaintiffs, who reserved their right to seek a higher amount in fees, seek $350,000 in fees, an amount that they argue represents the lodestar figure multiplied by 1.75.

The FLSA provides that, in an action concerning unpaid wages or unpaid overtime compensation, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ." 29 U.S.C.A. § 216(b).

4
Case 2:19-cv-04054-NKL   Document 83   Filed 07/20/20   Page 4 of 14

### i. The Lodestar Method

The process of determining a reasonable attorneys' fee in a FLSA case often begins with the traditional "lodestar" calculation—multiplication of the number of hours that an attorney reasonably expended in the litigation by the attorney's reasonable hourly rate. *Copeland v. ABB, Inc.*, No. 04-4275-CV-C-NKL, 2006 WL 2356140, at *1 (W.D. Mo. Aug. 15, 2006), *aff'd*, 521 F.3d 1010 (8th Cir. 2008).

### a. Time

Plaintiffs seek compensation for time expended on this litigation through the date of their motion as follows:

| Attorney | Recorded Time |
|---|---|
| Matthew Clement | 167.5 hours |
| Kari Schulte | 97.4 hours |
| Ryan McDaniels | 202 hours |
| Kim Guthrie | 148.2 hours |
| John Brooks | 3.2 hours |

In addition, they seek compensation for "approximately $10,000 in attorney time" that they anticipate being required to "implement and conclude the settlement . . . ." Doc. 74, p. 6 ("The total 'lodestar' (time multiplied by rates) to date in this case is $193,076. In addition, Plaintiffs' counsel believe there will be approximately $10,000 in attorney time required to implement and conclude the settlement if it is approved. Thus, the total "lodestar" figure is $203,076."). Plaintiffs' position is that $203,076 represents the lodestar figure—the product of their reasonable hours and their reasonable hourly rates—for their work in this case. Doc. 74, p. 6. Nonetheless, they propose

reducing the lodestar amount to $200,000 to "[t]o account for any missed duplication in Plaintiffs' counsel's review of the time records." Doc. 74, p. 6.

Defendants argue that the Court "should award Plaintiffs only their lodestar fee amount as represented when the parties reached the settlement on or about February 26, 2020," that is, $165,000. Defendants argue that the additional $35,000 of the "lodestar" figure that Plaintiffs claim represent hours that were unnecessary, duplicative, and excessive, and therefore were not reasonably expended. Plaintiffs counter that the $165,000 figure they provided to Defendants at the time of settlement was just an "estimate" of their fees, not a complete calculation of fees due to them as of that date. Moreover, while Defendants' counsel drafted the settlement agreement, Plaintiffs' counsel, at Defendants' request, "draft[ed] all of the settlement approval pleadings"—a task, Plaintiffs' counsel states, that defense counsel typically performs.

The Court sees no reason why Plaintiffs' counsel's efforts to complete the settlement ought not be compensated in line with their other efforts in the litigation. Defendants have cited no case law to support their argument that attorneys' efforts to finalize a settlement should be discounted. In fact, courts in the Eighth Circuit frequently take account of time spent negotiating and finalizing settlements in calculating a lodestar figure. *See, e.g., Burchell v. Green Cab Co., Inc.*, No. 15-5076, 2016 WL 894825, at *2 (W.D. Ark. Mar. 8, 2016) ("The itemized hours reflect that most of the work involved negotiating a settlement with defense counsel. The Court finds, however, that the requested hourly rates are within the range of reasonableness for similar work performed in the Northwest Arkansas area by persons of similar experience and qualifications."); *In re: Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWF AJB, 2010 WL 145278, at *10 (D. Minn. Jan. 8, 2010) (awarding fees for, *inter alia*, "time related to [firm']s work negotiating and finalizing the Claimant's Release for the MDL settlement"); *Williams v. BPV Mkt.*

*Place Inv'rs, L.L.C.*, No. 14-1047 CAS, 2014 WL 5017934, at *2 (E.D. Mo. Oct. 7, 2014) (noting, in concluding, on unopposed motion for fees, that attorneys' fee request was "reasonable based on the amount of time and effort expended on this case" that "Plaintiffs' attorney in this case has undertaken significant effort required to obtain the settlement agreements reached by the parties, including but not limited to . . . preparing papers to finalize the settlements and petition the Court for their approval").

Defendants also argued that the Court should not award the $35,568 in fees sought by attorney Kim Guthrie and the $688 in fees sought by John T. Brooks because Plaintiffs did not submit documentation supporting those fees. However, Plaintiffs subsequently explained that the time records were omitted because of a clerical error, Doc. 78, and they submitted time records supporting the fees, Doc. 78-1. Defendants since have not attempted to suggest that the time expended by Guthrie and Brooks in this litigation was unreasonable.

Plaintiffs' counsel state that they "reviewed the time records and exercised . . . judgment to remove time that was truly duplicative." Doc. 75, p. 9. The Court has reviewed the time records submitted by Plaintiffs, including those of Attorneys Guthrie and Brooks, for duplicative efforts and overbilling. The Court finds that fees for more than two attorneys to attend one deposition on Plaintiffs' behalf (*see* Doc. 74-1, p. 10, Doc. 74-2, p. 10) should not be shifted to Defendants, and therefore reduces the hours of the three attorneys who attended the corporate representative deposition by one-third. Likewise, one attorney's time editing billing entries for "spelling and syntax" for inclusion in the fee motion, Doc. 78-1, p. 2, warrants a reduction. While time spent exercising billing judgment in connection with a motion for fees might reasonably be compensable, review of time entries for common errors does not warrant billing at an attorney's

rate. Apart from these instances, the Court has not identified any time entries that appear to require reduction.

However, Plaintiffs also seek reimbursement for fees that they have not yet incurred. *See, e.g.,* Doc. 74-1, ¶ 12 ("Based on my experience, there will be approximately $10,000 in additional fees (inclusive of all Plaintiffs' counsel) to implement and conclude the settlement for a case of this size."). Plaintiffs have not cited, and the Court is not aware of, any authority permitting awards for fees that have not yet been incurred. Indeed, case law that Plaintiffs quote in their briefs suggests that time for which attorneys seek compensation should be documented. *See* Doc. 74, p. 7 ("An applicant for fees 'must document its fees in order to demonstrate its entitlement to an award' . . . ." (citing *Ewald v. Royal Norwegian Embassy*, No. 11-2116, 2015 WL 1746375, at **4-5 (D. Minn. Apr. 13, 2015)). Without time records that establish the reasonableness of the fees that they have not yet incurred, the Court cannot assess whether the fees would be reasonable. Perhaps for this reason, counsel seeking fees in this Court typically wait until all other aspects of the litigation have concluded in order to move for fees. Nonetheless, to avoid penalizing the Plaintiffs for the timing of their motion, the Court will permit Plaintiffs to move, after the settlement has been finalized, for additional fees for time spent on this case after the motion for fees was made.

b. **Hourly Rates**

Plaintiffs request that their time be billed at the following hourly rates:

| Attorney | Requested Hourly Rate |
|---|---|
| Matthew Clement | $400 |
| Kari Schulte | $300 |
| Ryan McDaniels | $300 |

| Kim Guthrie | $240 |
| John Brooks | $215 |

Defendants have not challenged the hourly rates that Plaintiffs seek. In effect, by agreeing not to challenge Plaintiffs' motion for fees up to $165,000, Defendants have conceded that Plaintiffs' billing rates are reasonable.

Indeed, Plaintiffs have provided evidence that their hourly rates are reasonable. *See* Doc. 74-3 (Declaration of Roger G. Brown, attorney with over forty years of experience in civil litigation, including wage-and-hour litigation, and familiarity with rates for attorneys throughout Missouri in wage-and-hour cases, stating that the rates sought by Plaintiffs are "at or lower [than] the rates charged by attorneys with similar skills, experience and reputation in both the central Missouri area and throughout the State of Missouri); *Drake v. Steak N Shake Operations, Inc.*, No. 14-1535, 2019 WL 2075895, *3 (E.D. Mo. 2019) (finding hourly rates of $500 and $475 per hour "reasonable" in FLSA case); *see also Channel v. Gates & Sons Barbecue of Missouri, Inc.*, No. 14-0248-BCW, 2016 WL 7048390, at *3 (W.D. Mo. June 2, 2016) (finding attorney rates between $275 and $475 in FLSA case reasonable in light of third-party affidavits and counsel's affidavits and lack of evidence suggesting that the rates were not reasonable).. Accordingly, the Court finds that Plaintiffs' requested rates for this FLSA collective action are reasonable.

   c. **Lodestar Calculation**

Multiplying the hours reasonably expended by the reasonable hourly rates produces the figures shown below:

| Attorney | Reasonable Time | Requested Hourly Rate | Fees |
|---|---|---|---|
| Matthew Clement | 163.7 hours | $400 | $65,480 |
| Kari Schulte | 90.4 hours | $300 | $27,120 |
| Ryan McDaniels | 197.7 hours | $300 | $59,310 |
| Kim Guthrie | 148.2 hours | $240 | $35,568 |
| John Brooks | 3.2 hours | $215 | $688 |
| **TOTALS** | **618.3 hours** | | **$187,478** |

### ii. Whether the Lodestar Figure Should Be Adjusted

Plaintiffs argue that a multiplier of 1.75 should be applied to the lodestar figure to account for the risk of loss counsel took on, the complexity of the case, and their success.

"An upward adjustment to an attorney's lodestar hourly rate is permissible in certain rare and exceptional cases . . . ." *Forshee v. Waterloo Indus., Inc.,* 178 F.3d 527, 532 (8th Cir.1999). However, the presumption in a FLSA case is that "the lodestar method yields a 'reasonable' fee" in a FLSA case." *Burchell v. Green Cab Co., Inc.*, No. 15-5076, 2016 WL 894825, at *2 (W.D. Ark. Mar. 8, 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010)).

"Because the lodestar amount may already compensate the applicant for exceptionally good service and results, . . . the fee applicant must do more than establish outstanding service and results. The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended." *Forshee*, 178 F.3d at 532; *see also Ewald*, 2015 WL 1746375, at *5 (D. Minn. Apr. 13, 2015) (noting that "many" of the factors considered in determining whether to adjust the lodestar figure "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" (quotation marks and citation omitted)).

Plaintiffs argue that, "[g]iven the complexities of the corporate scheme in this case, the vigorous defense asserted and the results obtained (getting each class member more than they would have been properly paid initially), a multiplier will more properly promote the policies underlying the fee provision of the FLSA to encourage and ensure attorneys are willing to vindicate the employee's rights." Doc. 74, p. 9. Among the complexities of this case, Plaintiffs argue, was "the corporate scheme the Defendants deployed throughout the country" in "its seventy-five (75) plus subsidiary corporations . . . ." *Id.*, p. 10. Plaintiffs purportedly discovered "at least five different policies followed by Aerocare subsidiaries regarding on-call pay for CSRs throughout the applicable period, and multiple locations changed their respective policies within the applicable period." *Id.* Plaintiff also cite their efforts to combat Defendants' "vigorous defense . . . on the issue of whether AeroCare Holdings, Inc. (the defendant holding all of the money) was an employer under the FLSA for the customer service representatives in the proposed class." *Id.* The case, they say, "required extensive fact discovery, as well as high-level legal analysis." However, the "extensive" work is accurately reflected in the recorded time—more than 600 hours accrued in less than one year—and the "high-level legal analysis" is reflected in counsel's rates. *See Morales v. Farmland Foods, Inc.*, No. 08-504, 2013 WL 1704722, at *6 (D. Neb. Apr. 18, 2013) ("The novelty and complexity of a case and quality of an attorney's performance are reflected in the number of billable hours and the reasonable hourly rate."). Similarly, counsel's experience, reputation, and superior ability are reflected in their rates—which are largely higher than the median rates outside of the Kansas City and St. Louis markets.[1] *See Missouri Lawyers Weekly* 2019 Billing Rates publication (noting median rate of $250 in "Outstate Missouri").

---

[1] Plaintiffs' counsel's offices are in Jefferson City. *See, e.g.,* Doc. 74, p. 15.

Plaintiffs argue that "courts in the Eighth Circuit routinely award fees with multipliers in excess of what is requested here." Doc. 74, p. 11. However, cases from within the Eighth Circuit that Plaintiffs cite as "applying" a multiplier did not. In both *Nelson v. Wal-Mart Stores, Inc.*, No. 05-0134, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009), and *Meller v. Bank of the West*, No. 18-0033, 2018 WL 5305562, at *9 (S.D. Iowa Sept. 10, 2018), *report and recommendation adopted*, No. 18-0033-JAJ, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018), the courts approved the award of a percentage of the settlement fund to the prevailing attorneys. *Nelson*'s reference to a 2.5 multiplier and *Meller's* reference to a 1.67 multiplier were merely each court's "cross checking" the awarded fees against the lodestar. *See Nelson*, 2009 WL 2486888, at *2 ("A lodestar cross-check, which only takes into account the hours committed to date, results in a multiplier of 2.5."); *Meller*, 2018 WL 5305562, at *9 ("[C]ross checking the fee request against the lodestar in this case also demonstrates its reasonableness.").

Similarly, other cases from within the Eighth Circuit that Plaintiffs cite apply the "percentage of the benefit" method to calculating attorneys' fees and therefore are not relevant upon Plaintiffs' motion for a fee award calculated using the lodestar method. *See* Doc. 74, p. 2 ("Here, Plaintiffs' counsel seek fees under the lodestar method."). In *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005), "Plaintiffs' counsel achieved a substantial settlement of $80 million, which, . . . to the court's knowledge [wa]s the largest securities fraud class action settlement in the District of Minnesota and the second largest in the Eighth Circuit." *Id.* at 994. The court awarded fees to plaintiff's counsel of 25% of the settlement funds. Likewise, in *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002), *aff'd*, 350 F.3d 747 (8th Cir. 2003), the court awarded a percentage of the net recovery as fees. *Id.*

at 1066 (E.D. Mo. 2002). Here, Plaintiffs declined to seek fees by the percentage-of-the benefit method.

Plaintiffs cite the fact that their recovery of fees in this case was contingent upon Plaintiffs' prevailing, but they have not cited a case in the Eighth Circuit where a contingency risk justified a lodestar multiplier in either a FLSA case or any other case. Nor have they shown that the absence of such a multiplier would make it difficult for future plaintiffs to find legal representation for this kind of case. *See Hendrickson v. Branstad,* 934 F.2d 158, 163 (8th Cir. 1991).

Plaintiffs also argue that their success was extraordinary because "this case started with Defendants arguing that it was a Missouri only case with [fewer] than ten people in a potential collective action," while the settlement approved by the Court "provides substantial monetary relief to opt-in participants throughout the country"—more than 100 customer service representatives." Doc. 74, p. 12. Plaintiffs argue that the settlement "essentially voids" Defendants' statute-of-limitations defenses and provides each opt-in participant "more than they would have received had they been properly paid at the time of their work." *Id.* However, as discussed above, the "lodestar amount . . . already compensate[s] the applicant for exceptionally good service and results," and the Court cannot find on this record that the quality of service rendered and the results obtained were so markedly superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended that they warrant an upward adjustment of the lodestar figure. *Republican Party of Minn. v. White*, 456 F.3d 912, 921 (8th Cir. 2006) (quoting *Forshee*, 178 F.3d at 532); *see also Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) ("[T]o avoid double counting, the results obtained and the contingency of payment should not ordinarily be considered as independent grounds to enhance the lodestar.").

13
Case 2:19-cv-04054-NKL   Document 83   Filed 07/20/20   Page 13 of 14

For these reasons, the Court cannot find that this is the rare or exceptional case justifying an upward adjustment of the lodestar figure. *See Roeser v. Best Buy Co.*, No. 13-1968 JRT/HB, 2015 WL 4094052, at *13 (D. Minn. July 7, 2015) (declining to recommend application of multiplier where, *inter alia*, the "case was settled early, efficiently, and non-contentiously" and "the number of attorneys and firms involved, the number of hours billed, and the hourly rates of those attorneys included in the lodestar already take into account the contingent nature of the action and the risk of non-recovery").

### B. Costs

The FLSA requires the defendant to reimburse the prevailing plaintiff for the "costs of the action." 29 U.S.C.A. § 216(b). Defendants have agreed to pay the $8,050 in costs that Plaintiffs seek. Doc. 77, p. 12. The Court finds the total costs reasonable.

### C. Service Awards

Defendants also have agreed to pay the two named plaintiffs' service awards in the amount of $5,000 each. Doc. 77, p. The Court finds the service awards reasonable.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion (Doc. 73) for fees, costs, and service awards is GRANTED IN PART and DENIED IN PART. Plaintiffs are awarded fees in the amount of $187,478 and costs in the amount of $8,050. Each named Plaintiff shall receive a service award of $5,000.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: July 20, 2020
Jefferson City, Missouri